UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SONIA COLON,

      Plaintiff,

  v.                                  CASE NO. 8:16-CV-3215-T-23MAP

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

      Plaintiff suffers from a host of severe and chronic impairments, some congenital. Almost nine years ago, she applied for disability insurance benefits (DIB), period of disability benefits, and supplemental security income (SSI). Denied administratively, she appealed to this Court, which remanded the matter back for further administrative proceedings.[1] The same ALJ again denied her claims at step four of the sequential analysis, finding that despite her chronically severe impairments, she possessed the residual functional capacity (RFC) to do her former clerk-type jobs. She now comes back to this Court for another judicial review, presenting a litany of complaints about the latest administrative decision.[2] *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). But all these boil down to this compound question: Did the ALJ evaluate the evidence in accordance with the regulatory

---

[1] *Colon v. Colvin*, No. 8:12-cv-2011-T-27MAP (M.D. Fla. September 11, 2013) (Whittemore, J.).

[2] Here is Plaintiff's list of issues: The ALJ failed to (1) follow this Court's previous order regarding review of treating doctors' opinions; (2) assign proper weight to the treating and state agency physicians; (3) recognize the severity of all impairments and include them in the RFC; (4) pose a complete hypothetical to the vocational expert; (5) utilize the Eleventh Circuit pain standard; and (6) properly analyze the lay witness testimony.

scheme and did he support his decision with substantial evidence? The answers are no and no. Moreover, after years of litigating the same administrative claim, and armed with medical evidence that reports chronic conditions that have worsened, she clearly meets her evidentiary burden at step four and convinces me that the Commissioner cannot meet the Administration's burden at step five. Therefore, I recommend the matter be remanded for an award of benefits with a disability onset date of January 31, 2011 (corresponding to the date that she reported debilitating pain to the same medical provider that United States District Judge Whittemore identified as the one the ALJ should have considered).[3]

 *A. Background*

Born in 1985, Plaintiff holds a GED (R. 30) and has relevant work experience as a cashier, receptionist, sales clerk, and nursery school attendant (R 18). She alleges a disability onset date of June 16, 2009 (which is also the date she filed her claim), due to spina bifida, tether spinal cord, neurogenic bladder, chronic cystitis, pulmonary stenosis, chronic urinary infections, and high risk pregnancy (R. 77); she also suffers from systemic lupus erythematosus, myofascial pain syndrome, and connective tissue defect (R. 908-910).[4]

When she appeared before ALJ Smith the first time, he denied her claim (March 28, 2011;

---

[3] This matter is referred to me for a report and recommendation. 28 U.S.C. § 636(b); Local Rule 6.01(21).

[4] Spina bifida is a "limited defect in the spinal column, characterized by absence of the vertebral arches, through which the spinal membranes, with or without spinal cord tissue, may protrude." *Stedman's Med. Dictionary* 1449 (25th ed. 1990). Systemic lupus erythematosus is "an inflammatory connective tissue disease with variable features, frequently including fever, weakness and fatigability, joint pains or arthritis resembling rheumatoid arthritis, diffuse erythematous skin lesions on the face, neck or upper extremities, with liquefaction degeneration of the basal layer and epidermal atrophy, lymphadenopathy, pleurisy or pericarditis, glomerular lesions, anemia, hyperglobulinemia, and a positive LE cell test, with serum antinuclear antibodies." *Id* at 898.

*see* R. 10-19). She exhausted her administrative remedies and then sought review here. In September 2014, United States District Judge James D. Whittemore issued an Order reversing the Commissioner's decision and remanding the case for further administrative proceedings (R. 560-565). In sum, he determined the ALJ had erred by ignoring the testimony of a treating nurse practitioner (the one Plaintiff reported to on January 31, 2011, that her pain had become debilitating), and had failed to properly consider a treating physician's opinion.[5] On remand, ALJ Smith, albeit with the aid of a vocational expert (VE), ruled that Plaintiff possessed the RFC to do her former work as a receptionist and sales clerk (a step four decision). *See* R. 478-493. The Appeals Council denied review, making the ALJ's September 2014 decision the binding administrative ruling and the one that she now presents for judicial review.

    B.    *Standard of Review*

To be entitled to DIB and/or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a

---

[5] Judge Whittemore adopted my report and recommendation recommending the same (*see* note 1).

"sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has

been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

    C.    *Discussion*

        *1. the required regulatory perspective*

The regulations instruct the ALJ to consider not only the type of evidence presented (i.e., medical and non-medical sources) but the manner and method for applying that evidence to the disability calculus. For example, the medical-source opinions by treating physicians are afforded considerable weight.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

20 CFR § 404.1527(d)(2).

In the Eleventh Circuit, this means the ALJ must give a treating physician's testimony substantial or considerable weight unless the ALJ gives "good cause" otherwise. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). When an ALJ evaluates complaints about pain, the regulations require him to consider the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence (tests and diagnostic results) and other evidence (evidence from medical sources, medical history, and statements about treatment the claimant has received). *See* 20 C.F.R. §§ 404.1529, 404.1528, and 404.1512(b)(2)-(6). The Eleventh Circuit interprets this to require the ALJ to think about the expected and reasonable consequences of an objectively determined condition; that is, is the disease so severe that it can be reasonably expected to give rise to the alleged pain (or non-exertional impairments)? *Foote v. Chater,* 67 F.3d 1553, 1560-61 (11th

Cir. 1995); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). And, in certain instances pain alone can be disabling even if unsupported by objective evidence. *Foote* at 1561.

SSR 96-7p, which clarifies 20 CFR § 404.1529, emphasizes the same:

> It is "not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible. It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.[6]

In short, the ALJ is tasked with considering the record as a whole: the claimant's medical signs and laboratory findings; her diagnosis and prognosis; the medical opinions from treating and examining physicians or psychologists; the statements and reports from the claimant, and those of her treating or examining physicians or psychologists and others about her medical history, treatment and response; her prior work record and efforts to work; her daily activities; and other information concerning her symptoms and how the symptoms affect her ability to work. *Id.*

Of these, the nature and extent of a claimant's treatment relationship with her physician (or treating source) is particularly relevant. The longer the relationship, the greater the longitudinal perspective, and the more weight the ALJ must give to that source's opinions and testimony. 20 C.F.R. § 404.1527(c)(2)(i). Consistency of the claimant's complaints and the consistency of medical

---

[6] Social Security Rulings do not have the force and effect of the law or regulations but are to be relied upon as precedents in determining other cases where the facts are basically the same. *Heckler v. Edwards*, 465 U.S. 870, 874 n. 3 (1984); *see Klawinski v. Comm'r of Soc. Sec.*, 391 Fed.App'x 772, 775 (11th Cir. 2010) ("Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration. Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference...").

opinions are likewise relevant and instructive. So too is the medical source's pedigree; a specialist's opinion about a disease within her speciality is weighted more heavily than the opinion of non-specialist about the same disease. *Id* at (c)(4), (5). Lastly, the ALJ cannot arbitrarily pick and choose his medical evidence – selecting only that evidence which supports his rejection of the claim while ignoring or disregarding more convincing and timely evidence of disability. *McCruter v. Bowen,* 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; accordingly, ALJ cannot point to evidence that supports the decision but disregard other contrary evidence); *Goodley v. Harris,* 608 F.2d 234, 236-37 (5th Cir. 1979) (ALJ may not choose to "arbitrarily ignore" uncontroverted medical testimony).[7] Lupus, which Plaintiff has, causes inflamation of the connective tissue and affects many systems of the body. It subsides and recurs with varying severity. And, sadly, it is incurable. *See* AM MED ASSOC ENCYCLOPEDIA OF MEDICINE (1989) at p. 653. One would expect that a person suffering from the type of lupus that Plaintiff suffers from would complain about malaise, fatigue, and pain, and that she too would also report that some days were better, perhaps much better, than others. Picking the good days and ignoring the bad runs afoul of the mandate that the ALJ consider the administrative record as a whole.

    2. *administrative decision*

ALJ Smith in his September 2014 decision determined Plaintiff's spina bifida and systemic lupus erythematosus to be severe impairments. In fact, he concluded that Plaintiff suffers from a long list of other severe impairments: degenerative disc disease, asthma, neurogenic bladder, migraines, carpal tunnel syndrome, neuropathy, and obesity (R. 480). And she has or has had other

---

    [7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions the former Fifth Circuit rendered prior to October 1, 1981.

ailments too: anemia, hyperlipidemia, hypothyroidism, urinary tract infections, pollakuria, abnormal liver function tests, knee problems, and sinusitis (R. 481). The symptoms she complained to the ALJ about were even more numerous: pain; swelling; fainting spells; sleep problems; incontinence; dizziness; vision problems; weakness; shortness of breath; headaches; balance problems; medication side effects (dizziness, nausea, blurred vision, chest pain, fatigue, rapid heart rate, drowsiness, weakness, lightheadedness, diarrhea, constipation, upset stomach, and tiredness); back surgeries causing inability to stand or sit; anemia; low back pain; swelling and pain in ankles and feet; depression; anxiety; migraines; recurrent urinary tract infections; heart murmur; tumor removal; recurrent bouts of meningitis; difficulty socializing due to incontinency and physical limitations; worsening complaints; surgery for valvulaplasty; thyroid disease; cholesterol issues; loss of feeling due to chronic urinary tract infections; frequent bathroom trips; frequent naps; and difficulty handling stress or change in routine (R. 485).

      The ALJ noted all this, and he noted that Plaintiff said that her symptoms and limitations had worsened. She reported more fatigue and weakness in her legs; that she had recently been diagnosed with lupus; that as a complication of her spina bifida she had six or seven urinary tract infections to date that year and regularly used a catheter; that she had ankle problems requiring her to elevate her legs to chest level; that her hands hurt and go numb; that she sometimes drops things, and that she had difficulty with fine manipulation. From all this she says she has two to three good days a week. On her bad days she tends to rest and lie down with her legs propped up. She takes three or more rest breaks a day of 30-40 minutes each. She can sit for ten to fifteen minutes, can stand for up to five minutes, can walk half a block, and stooping is painful. She cannot lift a gallon of milk repeatedly, and it hurts to lift her arms overhead. She encounters difficultly understanding what she

8

is reading, has problems with memory, and only drives for short distances (R. 486). All this her parents corroborated.

But what symptoms from this litany of symptoms the ALJ accepted or rejected is less than clear. What is clear is that he rejected her account as to the intensity, persistence, and limiting effects of these symptoms, which is the standard language a reviewing court always sees in administrative opinions (R. 486). The upshot is that he found that she could perform a range of light or sedentary work, including the type of work she had done before (R. 493). Put differently, she did not meet her burden at step four of the sequential analysis. To support all this, the ALJ pointed to exhibits 4E, 22E, 26E, 8F, 11F, and 15F of the administrative record. And from that he deduced that Plaintiff's "wide variety of activities of daily living [were] compatible with competitive work." (R 486). These exhibits show otherwise to me.

In Exhibit 4E (a pain questionnaire dated July 14, 2009), Plaintiff states that her sister helps with cooking, laundry and childcare, that she cleans her home "very minimal due to swelling and pain and back pain," and that she stays home and "does not socialize at all" (R. 191-93). More recently, on August 31, 2012, Plaintiff said that she plays with her child to the extent that she can, relying on her "mom and dad [to] help a lot." She needs help getting out of the tub. Sometimes she needs help with caring for her hair. If that were not enough, she has trouble with feeding and using the toilet. Her pain makes it difficult to dress. She does not prepare her own meals because her wrists hurt, and she cannot stand for long because her back hurts. She shops about fifteen times a month but she leaves the store after one-half hour to sit in the car, and she can walk about 100 feet before needing to rest for about five to ten minutes (Exhibit 22E, R. 758-765). Plaintiff completed a supplemental pain questionnaire on November 20, 2012, that paints a more difficult existence. She

says she experiences pain on a constant basis, which is severe all over including in her lower back, ankles, shoulders, and wrist. Intervals of rest relieves her constant pain. Her mother does the laundry; her father helps with shopping. Plaintiff reported that she prepares quick meals, ones that are easy and healthy for her children. But this task takes time when she is in a lot of pain. She can do housecleaning in intervals a little at a time at a very slow pace. And she admitted that she can drive occasionally. But she needs the help of her parents to care for her children. Her pain does not allow her to sit or stand for long periods of time (Exhibit 26E, R. 781-783). Plaintiff's mother and father, who completed function reports too, corroborated their daughter's account (Exhibit 23E, R. 766-773; Exhibit 27E, R. 284-291).

All this testimony is in line with the objective evidence, which is the comparison the regulations command. In late December 2012, Plaintiff treated with a specialist, a rheumatologist (Dr. Michelle Spuza-Milford). The physician's new patient note reports Plaintiff complained of hand, wrist and ankle pain, weak legs, and bladder problems that "prevent her from working" (R. 892). And Plaintiff also informed her physician that she needed help with cooking, needed to sit due to back pain, needed to take breaks with toileting and showering, and had to sit every ten to fifteen minutes. She could not exercise and could not fix her hair or lift her arms above chest level (R. 892). Those complaints and others (hand, wrist, knee, ankle pain; swollen legs; headaches and weakness) prompted the rheumatologist to order a battery of diagnostic tests (R. 904-905). The lab tests results and the clinical exam convinced the specialist that Plaintiff suffered form systemic lupus erythematosus, a disease neither her family physician nor any other physician had diagnosed.[8] The

---

[8] Plaintiff treated with her family practitioner, Dr. Serag, from October 2011 through August 2012 (R. 872-885). That physician did not test for lupus and assessed her as having hypothyroidism, dyslipid, obesity, myalgia, and headaches (R. 873). At the hearing before ALJ Smith, Plaintiff

specialist also opined that Plaintiff suffered from a connective tissue defect, vitamin B12 deficiency, vitamin D deficiency, simple goiter, lumbago, cervical spondylosis, lumbar spondylosis, congenital lumbosacral spondylosis, spina bifida of lumbar region with bladder dysfunction, internal derangement of knee, myofascial pain syndrome, and severe weakness/motor dysfunction including gullien-barre syndrome (R. 908-909). Plaintiff was counseled about body pain and weakness in relation to spina bifida, that her recent labs indicated a positive ANA with an atypical speckled pattern, and that she would suffer myalgias with evidence of inflammation (R. 909-910). The physician's notes from December 2012 through February 2014, consistently show that Plaintiff complained of weakness, hand, wrist, ankle and back pain, difficulty caring for herself at home, and pain upon walking (R. 904-929).

    That no physician had diagnosed Plaintiff with lupus before Dr. Spuza-Milford does not mean that Plaintiff's lupus spontaneously appeared just before visiting the specialist. Her complaints, albeit more sporadic, were similar to the ones she reported to Drs. Serag and Spuza-Milford. Dr. Patel, who performed a neurological consultation in September 2010, noted neck pain that radiates to hands with weakness and numbness in fingers, cervical radiculopathy, back pain which radiates to legs with weakness and numbness in feet (R. 433). When Nurse Practitioner Marty Folsom first evaluated Plaintiff in February 2010, he noted musculoskeletal symptoms, chronic neck pain, and swelling of feet and ankles chronic for many years (R. 862). Thereafter, Folsom's January 31, 2011, note indicates Plaintiff "related that her pain becoming more disabling – must have help with the physical care of her children (her father and sister are assisting)," "systemic symptoms

---

suggested that Dr. Serag did not know what to test for or what to look for despite her complaints of fatigue and leg pain (R. 509; R. 872-883).

11

feeling tired or poorly," "musculoskeletal symptoms low back pain, neck pain, ankle pain that radiated up to thighs," neurological symptoms weakness of fingers." (R. 843). The January 31, 2011 note indicates that Plaintiff's chief complaint was "social security form filled out by PCP" (R. 843).[9]

Despite the longitudinal evidence documenting Plaintiff's impairments and non-exertional complaints, the ALJ focused on the early medical evaluations prior to her lupus diagnosis and used those to discredit her testimony and nonexertional complaints. And while the most recent treating doctors have not rendered significant opinions about Plaintiff's prognosis or limitations, their voluminous treatment notes and objective test results certainly corroborate Plaintiff's allegations and consistently document her subjective reports. Plaintiff's systemic lupus erythematosus, which is incurable and the more serious form of the malady, causes inflammation of the connective tissue and affects many systems of the body. Symptoms subside and recur with varying severity. *See* AM MED ASSOC ENCYCLOPEDIA OF MEDICINE (1989) at p.653. This, together with her other impairments in combination, confirm and reasonably explain Plaintiff's complaints of malaise, fatigue, and pain. And, it also explains Plaintiff's admitted good days and bad days, and her "normal" examinations on some dates. The ALJ picked the good days and ignored the bad ones to support his finding that Plaintiff possessed the RFC to return to her prior jobs. An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence. *McCruter,* 791 F.2d at 1548 (administrative review must be of

---

[9] Folsom's other appointment notes on April 1, 2010, June 29, 2010, August 3, 2010, November 9, 2010, April 18, 2011, April 28, 2011, and August 29, 2011, however, reveal no musculoskeletal complaints and indicate Plaintiff was "self-reliant in usual daily activities" (R. 412, 416, 420, 833, 837, 840, 848, 852, 860). That said, the medical records also reveal consistent complaints associated with Plaintiff's recurrent urinary tract infections resulting in fatigue and necessitating treatment with antibiotics and routine catheterization, that are a complication of her spina bifida. *See* R. 296-303 (All Children's Hospital); R. 407, 411, 426, 832, 836, 839, 843, 847, 855 (Nurse Practitioner Folsom, February 2010 – August 2011); and R. 893, 897, 904, 913, 919 (Dr. Spuza-Folsom, December 2012- February 2014).

the entire record; accordingly, ALJ cannot point to evidence that supports the decision but disregard other contrary evidence). Moreover, in view of this circuit's requirement that the ALJ consider the reasonable consequences of the disease, the ALJ erred in reaching his disability determination.

And, because the objective medical evidence and other record evidence support Plaintiff's subjective complaints, I find the ALJ improperly discounted her and her parents' testimony and the treating physicians' longitudinal appraisal of her problems. Instead, the ALJ assigned "significant weight" to Dr. Kline's January 2010 opinion that she can perform a full range of light work (R. 190; 491) and assigned "much weight" to Dr. Steele, who reviewed medical records only up through December 2012 and opined that Plaintiff can perform a full range of light work (Exhibits 14A and 15A). Clearly, these state agency doctors who rendered their opinions in January 2010 and January 2013 respectively did not review the treating rheumatologist's records (spanning from December 2012 through February 2014) nor did they consider her lupus diagnosis, and it is unlikely that they reviewed the administrative hearing testimony. The ALJ sidestepped facts comporting with the regulation's preference for longitudinal views of a claimant's condition and treatment. Moreover, by picking and choosing, the ALJ avoided the regulatory demand that he consider the whole person and the combined effects of her impairments over a relevant time. 20 C.F.R § 404.1523. As a result, I conclude that his decision is not supported by substantial evidence.

I find that the overwhelming evidence establishes that Plaintiff is not able to perform and sustain work related activities sufficient to allow her to perform any level of full-time work in the national economy. Her entitlement to benefits is clear as there is no basis on which an ALJ, crediting Plaintiff's subjective complaints in the context of the record evidence as required by the regulations, could conclude that Plaintiff is anything but disabled. In light of the extensive administrative

proceedings including a prior appeal to this Court, I am hesitant to recommend remanding this case for further administrative review. ALJ Smith has already held two administrative hearings and this Court has already remanded the case once for further administrative proceedings. The Commissioner should not be entitled "to adjudicate a case 'ad infinitum until it correctly applies the correct legal standard and gather evidence to support its conclusion.'" *Sisco v. United States,* 10 F.3d 739, 745 (10th Cir. 1993); *see also Davis v. Shalala*, 985 F. 2d 528, 534 (11th Cir. 1993) (court may remand for entry of an order awarding disability benefits where the Secretary has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt); 42 U.S.C. § 405(g) (court has "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing"). Fairness demands that the review process end at some point. After reviewing the record evidence, I find that there is substantial evidence of Plaintiff's disability and little or no evidence to support the Commissioner's position of no disability. Accordingly, I recommend that the case be remanded to the ALJ for an award of benefits.

In reaching this decision, I note that Plaintiff alleges an onset date of June 16, 2009, and she must prove disability onset by June 30, 2014. However, in the main, she asserts that her spina bifida (and related problems of recurrent urinary infections, pain, and fatigue) combined with her lupus are debilitating and disabling (doc. 13, p. 6). The administrative record reveals that she was not diagnosed with lupus until February 25, 2014 (R. 908), but, as summarized above, the record shows significant and consistent complaints and treatment for lupus-related symptoms even prior to her formal diagnosis with lupus. Given the nature of systemic lupus erythematosus, with numerous symptoms that subside and recur with varying severity, and in light of the longitudinal medical

14

evidence of all of Plaintiff's impairments and the other evidence of record documenting Plaintiff's limitations, I recommend an onset date of January 31, 2011, the date that Folsom documented Plaintiff's report of more disabling pain and the need for help from her father and sister to care for her children (R. 843). *See generally McGowan v. Colvin*, case no. 8:15-cv-1892-T-35AEP; 2017 WL 971972, *2-*3 (M.D. Fla. Mar 14, 2017) (citing *Branham v. Heckler*, 775 F.2d 1271, 1273 (3rd Cir. 1985)) (court may modify onset date). Plaintiff's evidence prior to this date does not establish disability.

*Conclusion*

For the reasons stated, it is hereby

RECOMMENDED:

1. That judgment be entered for Plaintiff and the case remanded for an immediate award of benefits based on the onset date of January 31, 2011.

IT IS SO REPORTED at Tampa, Florida on January 19, 2018.

*[signature: Mark A. Pizzo]*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).