UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SONIA COLON,

    Plaintiff,

v.                                         CASE NO. 8:16-cv-3215-T-23MAP

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## **ORDER**

Sonia Colon's unsuccessful claims for Social Security disability benefits and Supplemental Security Income return to the district court for review after a remand and a second denial of benefits. The magistrate judge recommends (Doc. 15) reversing the Commissioner and granting benefits. Mindful that, as the magistrate judge states, "[t]he court may not reweigh the evidence or substitute its own judgment for that of the [administrative law judge] even if it finds the evidence preponderates against the ALJ's decision" (Doc. 15 at 4), I sustain the Commissioner's objection to the magistrate judge's recommendation and affirm the Commissioner's decision.

## **BACKGROUND**

Born with spina bifida, Sonia Colon underwent surgery as a teenager to repair a "tethered" spinal cord. Also, Colon claims a neurogenic bladder, which reportedly

requires Colon to use a catheter, and in 2014 a doctor diagnosed Colon with lupus. Additionally, Colon alleges that she suffers from migraines, asthma, and pulmonary stenosis. Although not continuously employed, for much of the time between 2001 and 2009 Colon worked as a cashier, a service clerk, a receptionist, or a day-care assistant. (Rec. at 179–190) Colon initially reported that she stopped working because her "position was eliminated" (Rec. at 167) but later claimed that she stopped working "because of [her] conditions." (Rec. at 735)

Represented by counsel, Colon applied in 2011 for Social Security disability benefits and alleged an onset day in 2009. At a February 3, 2011 hearing, Colon testified that her medication forces her to nap several times each day, that each nap typically takes two hours, that she suffers at least two or three migraines daily, that she cannot concentrate, that she cannot stand for more than ten or fifteen minutes without developing an ache or pain in her legs, that she cannot sit for more than ten or fifteen minutes without needing to change position, and that she cannot lift more than ten pounds without developing a muscle ache. (Rec. at 34–38) Also, Colon testified that on a "bad day" her legs, back, arms, and wrists hurt and that she suffers at least four "bad days" per week. (Rec. at 38–39)

The administrative law judge, who found that Colon engages in no substantial activity, identified as severe several of Colon's impairments, including spina bifida, asthma, neurogenic bladder, migraines, and pulmonary stenosis. (Rec. at 12) After detailing Colon's medical record, the ALJ concluded that "there is very little

evidence regarding the claimant's medically determinable, severe impairments within the record before or around the time of the alleged onset date in this case. Moreover, even the objective medical evidence that does support the claimant's medically determinable impairments does not support" a functional limitation that precludes substantial gainful activity. (Rec. at 17) The ALJ reviewed a consultative examination from Dr. Duchesneau, who observed that:

> Claimant had normal lungs, normal cardiac, normal gait, could walk on heels and toes without difficulty, could do a full squat, had normal stance, required no assistive device, required no assistance changing for the examination or getting on and off the exam table, and was able to rise from her chair without difficulty. In addition, musculoskeletal examination revealed normal range of motion and full strength throughout, including all extremities.

(Rec. at 17)[1] Additionally, Dr. Ronald Kline, a medical consultant, reviewed Colon's medical records and concluded that Colon could occasionally lift twenty pounds, could frequently lift ten pounds, and could sit or stand for six hours in an eight-hour day. (Rec. at 383–90) The ALJ afforded "great weight" to Kline's and Duchesnaeu's assessments. (Rec. at 19)

Conversely, a nurse practitioner, Marty Folsom, opined after a January 31, 2011 visit with Colon that Colon could occasionally lift ten pounds, could not lift twenty or more pounds, and could not sit or stand for more than ten minutes. (Rec. at 452–58) Folsom concluded the report: "Info obtained through observation and patient report. I am not a certified disability provider. Suggest evaluation by

---

[1] Colon identifies in the record no request on remand for another consultative examination.

certified provider." (Rec. at 458) The ALJ afforded Folsom's opinion no weight "because he is not a medically acceptable source." (Rec. at 18)

Based on the medical record and the consultations with Kline and Duchesnaeu, the ALJ concluded that Colon could occasionally lift twenty pounds, could frequently lift ten pounds, and could sit or stand for six hours daily. Because a person with that residual functional capacity could find substantial gainful employment as a cashier, receptionist, sales clerk, or nursery attendant, the ALJ found Colon not disabled and denied the applications for disability benefits and Supplemental Security Income. (Rec. at 18–19)

After the Appeals Committee denied review, Colon sued in the district court. *Case no.* 8:12-cv-2011-JDW (Sept. 5, 2012). Adopting the magistrate judge's recommendation, the presiding judge in that action wrote that the ALJ failed to assign substantial or considerable weight to a purported opinion from Dr. Patel and offered an insufficient explanation for the failure to assign substantial or considerable weight to the opinion. Also, the presiding judge wrote that the ALJ improperly failed to consider Folsom's opinion. The presiding judge found that, although not a "medical" source, Folsom might constitute an "other" source. The district judge reversed and remanded to the Commissioner for further proceedings.

On remand, the ALJ concluded that Colon could perform substantial gainful activity and consequently persisted in denying Colon's claims. (Rec. at 478–94)

Charitably construed, Colon's memorandum (Doc. 13) asserts ten errors in the ALJ's second decision:

> 1. The ALJ failed to explain the weight he afforded the opinion of Dr. Spuza-Milord. (Doc. 13 at 3)
>
> 2. The ALJ failed to offer a "germane" reason for affording little weight to Dr. Patel's opinion. (Doc. 13 at 3)
>
> 3. The ALJ improperly rejected Nurse Folsom's opinion. (Doc. 13 at 4–5)
>
> 4. The ALJ "cherry-picked" or favored record items that suggested Colon's capability to work over reports that suggested Colon's inability to work. (Doc. 13 at 7–8)
>
> 5. The ALJ failed to recognize the severity of Colon's impairments. (Doc. 13 at 8–9)
>
> 6. The ALJ improperly determined that Colon's "residual functional capacity" permitted occasionally lifting twenty pounds, frequently lifting ten pounds, and sitting or standing for more than six hours daily. (Doc. 13 at 11–12)
>
> 7. The ALJ asked an incomplete "hypothet." (Doc. 13 at 12–13)
>
> 8. The ALJ failed to apply the Eleventh Circuit's "pain standard."
>
> 9. The ALJ "substituted his opinion for that of the doctors." (Doc. 13 at 13–15)
>
> 10. The ALJ afforded too much weight to "two individuals who had seen Colon one time" and afforded too little weight to the reports from Colon's parents. (Doc. 13 at 15–17)

The magistrate judge recommends (Doc. 15) reversing the Commissioner's decision. After reviewing at length Colon's medical history and reciting in detail Colon's subjective account, the magistrate judge wrote that Colon's "entitlement to benefits is clear as there is no basis on which an ALJ, crediting Plaintiff's subjective complaints in the context of the record evidence as required by the regulations, could conclude

that Plaintiff is anything but disabled." (Doc. 15 at 13)  The magistrate judge recommends an "immediate" award of benefits dating to January 31, 2011, the day Colon reported back and leg pain to Folsom.  (Doc. 15 at 14–15)

The Commissioner objects (Doc. 16) to the magistrate's report and recommendation.  Correctly observing that the report "mainly discusses Plaintiff's numerous subjective complaints with only sparse discussion of medical evidence," the Commissioner contends that the magistrate judge improperly "re-weighed" the evidence instead of deciding whether substantial evidence supported the ALJ's decision.  (Doc. 16)

## DISCUSSION

The Commissioner's decision warrants affirmance if the decision comports with the applicable law and if substantial evidence supports the decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1238–39 (11th Cir. 1983).  "Substantial evidence" means more than a "mere scintilla" but less than a preponderance.  *Bloodsworth*, 703 F.2d at 1239.

## 1. Dr. Spuza-Milord's opinion

The present record shows that Dr. Spuza-Milord saw Colon four times in 2012 and 2013.  (Rec. at 892–929)  During several visits, Colon complained about pain or weakness in her legs.  On at least two occasions, Colon complained about pain in her hands.  In each visit, Dr. Spuza-Milord observed that Colon appeared "well developed, well nourished," and "in no acute distress."  (For example, Rec. at 907)

Dr. Spuza-Milord concluded that Colon's back was "normal" and that Colon's hip flexion was "normal." Dr. Spuza-Milord, who observed no deformity in Colon's knees or ankles, wrote that Colon's strength was "normal," that Colon's cranial nerves were "normal," and that Colon's "gait and stance" were normal. (Rec. at 900) Other than swelling of the first metacarpal joint, Dr. Spuza-Milord observed no abnormality in, or deformity of, Colon's hands or wrists. (Rec. at 899)

During a February 2, 2014 visit in which Dr. Spuza-Milord observed that Colon appeared "well developed, well nourished," and "in no acute distress" and that Colon's gait, stance, and strength were "normal," Spuza-Milord checked a box for "severe weakness/motor dysfunction including gullien-barre syndrome." (Rec. at 908) Also, Dr. Spuza-Milord checked a box for "connective tissue defect." (Rec. at 908) Contending that the acceptance of Dr. Spuza-Milord's report compels awarding disability benefits, Colon asserts that the ALJ, who never stated explicitly the weight afforded to Dr. Spuza-Milord's opinion, must have rejected entirely Dr. Spuza-Milord's opinion. (Doc. 13 at 3)

An ALJ must afford a treating physician's opinion "substantial" or "considerable" weight unless a "good cause" warrants affording little weight to the opinion. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Under 20 C.F.R. § 404.1527, an opinion means a statement from a physician that "reflect[s] judgment about the nature and severity of your impairment(s), including your

symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."

To the extent the "assessment" in Dr. Spuza-Milord's record constitutes an opinion, at least two "good causes" warrant affording Dr. Spuza-Milord's opinion little weight. First, as the ALJ explained, the opinion conflicted with several other findings by Dr. Spuza-Milord. *See Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (collecting decisions). As the ALJ explained in detail, several of Dr. Spuza-Milord's observations militated against the conclusion that a disability precluded substantial gainful activity. (Rec. at 489) Second, the "opinion" appears conclusory. As the Commissioner observes (Doc. 14 at 6), nothing in Dr. Spuza-Milord's record explains the effect of the "severe weakness/motor dysfunction including gullien-barre syndrome" on Colon's ability to function. Because the ALJ "state[d] with at least some measure of clarity the grounds for" affording Dr. Spuza-Milord's assessment little weight, the treatment of the medical record comports with the applicable law. *See Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

**2. Purported lack of a germane reason for rejecting Dr. Patel's "opinion"**

Colon argues that the ALJ failed to afford Dr. Patel's opinion "substantial" or "considerable" weight and that the ALJ offered no "germane" reason for the failure. (Doc. 13 at 3–4) But Colon cites nothing in the record before the ALJ in which Dr. Patel offered a judgment about Colon's health or the effect of Colon's claimed

impairments on Colon's ability to work. As the ALJ discussed, Dr. Patel wrote after Colon visited his office that Colon was "in no acute distress." (Rec. at 431) Dr. Patel's examination revealed:

> ROM of neck is full. ROM of shoulders is full. ROM of lower extremities is full. ROM of upper extremities is full. Negative for rigidity. Negative for carotid bruits. Brudzinski's sign is negative. Tinel's signs are negative. Negative for atrophy, wasting, or asymmetry. Negative for proximate or distal weakness.

(Rec. at 432) Although Dr. Patel's examination showed no weakness, Dr. Patel recommended "rul[ing] out disc herniation." (Rec. at 433) Patel ordered half a dozen tests, including an MRI of the cervical spine and a nerve conduction study of Colon's lower extremities. (Rec. at 433) The record appears not to include a cervical MRI, but the nerve conduction study showed an abnormality "indicative of tibial and peroneal neuropathies, L-S radiculopathies, and PNP." (Rec. at 434) Dr. Patel recommended "clinical correlation" of the nerve conduction study, but the record includes no "clinical correlation." Neither the diagnostic results, which include no judgment by Dr. Patel or another treating physician about the nature or severity of Colon's impairment, nor the recommendation to "rule out disc herniation" constitutes a "medical opinion."

### 3. Claimed rejection of Nurse Folsom's opinion

Colon argues that the ALJ erred by affording little weight to Folsom's opinion. (Doc. 13 at 5) But the ALJ explained why he afforded Folsom's opinion little or no weight:

> Folsom's opinions are conclusory, providing very little explanation of
> the evidence relied on in forming those opinions. Moreover, Mr.
> Folsom apparently relied quite heavily on the subjective report of
> symptoms and limitation provided by the claimaint, and seemed to
> uncritically accept as true most, if not all, of what the claimant
> reported. Yet, as explained elsewhere in this decision, there exist good
> reasons for questioning the reliability of the claimaint's subjective
> complaints. Further, Mr. Folsom's opinions are extreme and not
> consistent with the record.

(Rec. at 492)

## 4. Claim of "cherry-picking"

Repeating in different words the arguments discussed in sections one and two, Colon asserts that the ALJ ignored Dr. Patel's and Dr. Spuza-Milord's "opinions" about Colon's medical condition. But, as explained above, neither Dr. Patel nor Dr. Spuza-Milord offered an opinion about the severity or effect of Colon's impairments (and to the extent the finding in Dr. Spuza-Milord's "assessment" constitutes an opinion, the ALJ explained that other findings by Dr. Spuza-Milord belied the assessment).[2]

## 5. Claimed failure to recognize "bilateral manual dexterity" as a severe impairment

Colon argues that the ALJ erroneously failed to include in the decision the severe disability of "lack of bilateral manual dexterity" or a functional limitation for that purported impairment. (Doc. 13 at 9) Colon cites a diagnostic report ordered by Dr. Patel, which showed "NCV abnormal indicative of bilateral [carpal tunnel syndrome.]" (Rec. at 443) Dr. Patel recommended "clinical correlation" of the

---

[2] Colon's memorandum (Doc. 13) asserts no argument that her spina bifida or another impairment meets or equals a listing.

nerve conduction study, but the record includes no clinical correlation. Colon cites an August 14, 2013 "report note" by Dr. Spuza-Milord and contends that "Dr. Spuza-Milord stated that it hurt Ms. Colon to lift her arms and that her hands were painful." (Doc. 13 at 9 (citing Rec. at 912)) But the report includes no "finding" or reasoned judgment by Dr. Spuza-Milord about the functionality of Colon's hands or the severity of the purported carpal-tunnel syndrome; rather, in the report Dr. Spuza-Milord documents Colon's complaint. In this circumstance, an unconfirmed diagnostic report and an uncorroborated and subjective complaint fail to establish a severe disability that precludes substantial gainful activity. In any event, "lack of bilateral manual dexterity" is not a medically determinable impairment but rather a symptom.[3]

Another point in Colon's memorandum warrants attention. After stating that the nerve conduction studies showed abnormal results, Colon criticizes the ALJ for mentioning the abnormal studies but not explaining the consequence of the studies. (Doc. 13 at 10) That argument cogently captures the dilemma faced by Colon and the ALJ and presented twice to the district court. Stated somewhat differently, the record includes a handful of abnormal diagnostic reports — some of which might explain the source of Colon's alleged pain and weakness — but the record includes neither a clinical correlation by a treating physician nor a helpful and non-conclusory

---

[3] Despite a dearth of evidence to show the severity of Colon's purported carpal tunnel syndrome, the ALJ included a manipulative limitation ("[Colon] can frequently reach, handle, finger, or feel"). (Rec. at 484)

explanation (or for that matter, any explanation) by a treating physician about the effect, if any, of the diagnostic reports in confirming Colon's complaints or in evaluating the severity of Colon's impairments.

**6. Purportedly improper determination of Colon's residual functional capacity**

Colon argues (Doc. 13 at 11–12) that accepting Folsom's opinion precludes finding that Colon could perform substantial gainful activity. As explained elsewhere in this order, the ALJ correctly observed that several findings (including several of Folsom's own observations) militate against accepting Folsom's opinion.

**7. Claim of an "incomplete hypothet"**

Colon's argument (Doc. 13 at 12) about the "incomplete hypothet" repeats the arguments about the ALJ's purported error in failing to accord substantial or considerable weight to the "opinions" of Folsom, Dr. Spuza-Milord, and Dr. Patel. For the reasons explained elsewhere in this order, the argument fails.

**8. Purported failure to apply the "pain standard"**

Colon argues that the ALJ improperly discounted, based on evidence that Colon occasionally aided her parents with housework, Colon's testimony of chronic and disabling pain. If a claimant reports pain from an "underlying medical condition" and if objective medical evidence confirms the severity of the alleged pain or if the medical condition "is of such a severity that it can reasonably expected to give rise to the alleged pain," the ALJ must credit the claimant's testimony absent

good cause for discrediting the claimant's testimony.[4] *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

Despite agreeing that several of Colon's medical impairments, including the spina bifida and the tethered spinal cord, "could reasonably be expected to cause some of the alleged symptoms," the ALJ discredited Colon's testimony about the intensity, persistence, and effect of her pain for three reasons. (Rec. at 486) First, the ALJ concluded that Colon's testimony conflicted with the "objective medical evidence." Second, the ALJ concluded that Colon's testimony conflicted with reports that Colon could perform housework. Third, the ALJ cited a conflicting statement by Colon.

The ALJ established "good cause" for affording Colon's testimony little weight. As explained elsewhere in this order, the ALJ examined more than half a dozen medical records in which Colon reported "feeling fine." (Rec. at 487–90) Also, the ALJ wrote:

> The claimant reported and testified that she is independent with her personal cares, she prepares meals, she performs household chores such as cleaning and laundry, she drives, she shops, she provides care for her children, she helps her son with homework, she spends time with others, she reads, and she watches television; all of which indicates she was fairly active and she had mostly intact activities of daily living.

---

[4] No objective medical evidence confirms the severity of Colon's pain.

(Rec. at 486, which cites Exhibits 4E, 22E, 26E, 8F, 11F, and 15F)  Although some of the ALJ's citations are suspect,[5] on several occasions Colon reported to a nurse practitioner or to a consultative examiner that she remained capable of independently performing the "activities of daily living."  (Rec. at 371, 402)  Additionally, other evidence tended to diminish the accuracy or reliability of Colon's testimony.  For example, Colon initially reported that she stopped working because her "position was eliminated" (Rec. at 167) but later claimed that she stopped working "because of [her] conditions."  (Rec. at 735)  The medical evidence, the reports about Colon's daily activities, and Colon's statements impugned the accuracy or reliability of Colon's reports about the intensity, persistence, and effect of her pain.

**9. Purported "substitution" of the ALJ's opinion**

Repeating in different words the arguments about the opinions of Folsom, Dr. Patel, and Dr. Spuza-Milord, Colon argues (Doc. 13 at 14–15) that the ALJ "sometime substitute[d] his own opinion for that of the doctors."  For reasons explained elsewhere in this order, the argument lacks merit.

**10. Claim of "improper analysis of lay testimony"**

Colon argues (Doc. 13 at 15–17) that the ALJ improperly failed to consider the testimony of Colon's parents, whose testimony the ALJ described as "merely corroborat[ing] the testimony of" Colon.  (Rec. at 491)  But the ALJ, who explained

---

[5] For example, in Exhibit 4E, Colon reported performing "minimal" housecleaning "due to swelling [and] pain."  Also, Colon reported that pain and swelling made shopping "difficult" and that Colon's sister helped Colon care for her child.  (Rec. at 193)

- 14 -

that the weight afforded to testimony from a "non-medical source" depends, among other items, "whether the [testimony] is consistent with other evidence" (Rec. at 491),  afforded little weight to the testimony of Colon's parents for the same reasons that the ALJ afforded little weight to Colon's testimony:  More than a mere scintilla of "objective medical evidence" undermined Colon's claims.

Also, Colon argues that the ALJ improperly considered the reports of two Disability Determination Services employees, who observed that Colon "had no difficulties." (Rec. at 491)  One of the employees wrote that Colon "bent and picked up 3 year old child and put on right hip without assistance."  (Rec. at 732)  The ALJ afforded the reports "some weight as they are consistent with the record, which shows the claimant was mostly normal on examination, she was fairly active, and she had mostly intact activities of daily living."  (Rec. at 491)  Colon correctly observes that the two employees "are not doctors" and "had never seen Ms. Colon before," but the governing law permits an ALJ to consider a report from a non-medical source.

## CONCLUSION

Although Colon reportedly visits a doctor monthly and claims that she has suffered for several years from disabling pain, the medical documentation in the present record shows a handful of doctor's visits.  During some visits, Colon complained about pain.  During other visits, the record shows no complaints, and the doctors' notes often show that Colon reported "feeling fine" and that Colon appeared

"normal" and "in no acute distress." Several record items, including the existence and result of the nerve-conduction study and the Neurontin, Midrol, and Plaquenil prescriptions, suggest severe impairments, but substantial evidence in the present record supports the Commissioner's decision that Colon retains the residual functional capacity to work.[6] Also, the decision comports with the applicable law. The Commissioner's objection (Doc. 16) to the magistrate's report and recommendation is **SUSTAINED**, the report and recommendation (Doc. 15) is **DECLINED**, and the Commissioner's decision is **AFFIRMED**. The clerk is directed (1) to enter judgment for the Commissioner of Social Security and against Sonia Colon and (2) to close the case.

ORDERED in Tampa, Florida, on March 30, 2018.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[6] Because Colon applied for disability benefits and Supplemental Security Income seven years ago and because the ALJ rendered the second decision more than three years ago, the present record is sorely outdated. This order expresses no opinion whether new claims for disability benefits and Supplemental Security Income, accompanied by thorough and longitudinal documentation of Colon's condition and functional limitations and alleging a more recent onset date, would succeed.